

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-19-00111-CR

_____

PAULA KAY LARKIN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 28255

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

MEMORANDUM OPINION

Paula Kay Larkin entered an open plea of guilty to harassment of a public servant. *See* TEX. PENAL CODE ANN. § 22.11. The trial court sentenced Larkin to five years' imprisonment after she pled true to the State's punishment enhancement, which alleged she was previously convicted of felony driving while intoxicated. *See* TEX. PENAL CODE ANN. § 12.42(a). On appeal, Larkin argues that she did not intelligently, knowingly, and voluntarily waive her right to a jury trial on punishment and that her counsel rendered ineffective assistance because he "did not persist until she accurately underst[oo]d the consequences of her choice to waive a jury."[1]

We conclude that the record does not support Larkin's claim. Instead, it shows that Larkin intelligently, knowingly, and voluntarily waived her right to a jury trial on punishment. As a result, we overrule all of Larkin's points of error and affirm the trial court's judgment.

## I.      Factual and Procedural Background

At her plea hearing, the State admitted Larkin's plea paperwork, including her waiver of a jury trial on punishment. The trial court's written admonishments correctly informed Larkin that her range of punishment was of "[a] term of not more than 20 years nor less than 2 years confinement." These written admonishments informed Larkin that she had the right to seek a jury trial on punishment and stated:

> If you have pled guilty without benefit of a plea agreement, the plea proceeding is your trial. Should the Court find you guilty, your punishment can be set anywhere within the range of punishment prescribed by law for the offense. If you are eligible you may receive deferred adjudication or community supervision, but there is no

---

[1]Larkin's brief clarifies that she raises no complaint about either her plea of guilty to the indictment or plea of true to the State's punishment enhancement allegations.

2

assurance that you will.  Once the Court has accepted your guilty plea, you cannot withdraw your plea without permission from the Court.

The written admonishments were signed by Larkin and the judge.

In writing, Larkin represented that she was "fully aware of the range of punishment for the offense and the consequences of [the] plea which [wa]s knowingly, freely, and voluntarily entered," and waived her right to a jury trial "both as to [her] guilt and assessment of punishment." Larkin and her attorney signed the written waivers, which were presented and approved in open court by Larkin's counsel, the State, and the trial judge, as shown by their signatures on the plea paperwork.

Even so, during the plea hearing, Larkin stated that she only "kind of" understood the enhanced range of punishment.  To ensure her full understanding, the trial court asked Larkin's counsel to "try one more time to make it clear."  After an off-the-record discussion, Larkin said she understood that the range of punishment was "anywhere from deferred adjudication probation all the way up to 20 years in prison."  When the trial court informed Larkin that she could "go to the jury for punishment," but that the jury could not assess "deferred probation," Larkin said, "I got that part."  Noting the look of confusion on Larkin's face, the trial court engaged in the following discussion:

THE COURT:  Okay.  Now you're looking at me like you're not really sure what I am saying.  What is it that you might be a little confused about?

THE DEFENDANT:  You're hinting at that two to 20.

THE COURT:  Uh-huh.

THE DEFENDANT:  And in my eyes, I'm seeing that's way out of range.

3

THE COURT: Well, that is the range of punishment that the Legislature has created for this offense since you are a repeat offender. If you plead true to that repeat offender paragraph and you plead true -- excuse me -- plead guilty to the offense alleged in the indictment, the range of punishment is two to 20, although, I could give you -- I, as the Judge, could give you deferred adjudication probation.

THE DEFENDANT: That's what I am trying to ask for.

THE COURT: And whether I do that or not, I don't know. I know nothing about you or your case. I do know now that you have a prior felony conviction for DWI. I know nothing about any of this, so I am going to listen to everything, and then I will make a decision.

THE DEFENDANT: Thank you.

THE COURT: But what I want you to understand, Ms. Larkin, is . . . You could also have a jury trial on punishment. So you can say, you know what, I don't think that Judge is going to be fair, so I am going to go to the jury for punishment and they will set your punishment. The big difference is, they can't give you deferred adjudication probation. I can.
And I want to make it abundantly clear to you, Ms. Larkin, I'm not telling you that I'm going to give you probation. I'm not telling you that I am going to give you 20 years in prison. What I am telling you is, I am going to consider the entire range of punishment, everything from two years deferred adjudication probation all the way up to 20 years in prison. I am going to --

THE DEFENDANT: I hear you.

THE COURT: -- consider the whole thing. Do you understand?

THE DEFENDANT: I understand on that part.

While warning Larkin many times that he may not assess community supervision, the trial judge admonished her that he could require her to serve 180 days in county jail as a term and condition of community supervision and would order substance abuse felony punishment if he sentenced her to community supervision. When Larkin tried to negotiate with the trial court, her counsel prompted the following discussion:

4

[BY DEFENSE COUNSEL]: Look, look. He's not negotiating with you.

THE DEFENDANT: I understand.

[BY DEFENSE COUNSEL]: What do you not understand about what he's told you?

THE DEFENDANT: I am just trying to make sure I got it down to a T with him. That's --

[BY DEFENSE COUNSEL]: Here's the deal. You can get up to 20 years in the pen. He can give you probation. He told you that if he gave you probation, he would make you go to SAFP.

THE DEFENDANT: I understand. . . . I understand what the options are.

Before accepting Larkin's pleas, Larkin assured the trial court that she understood her right to trial by jury on punishment. After considering the entire range of punishment, the trial court sentenced her to five years' imprisonment.

## II. The Record Shows Larkin Intelligently, Knowingly, and Voluntarily Waived Her Right to a Jury Trial on Punishment

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. CONST. amend. VI. "The right of trial by jury shall remain inviolate." TEX. CONST. art. I, § 15; TEX. CODE CRIM. PROC. ANN. art. 1.12. "As a matter of federal constitutional law, the State must establish, on the record, a defendant's express, knowing, and intelligent waiver of jury trial." *Hobbs v. State*, 298 S.W.3d 193, 197 (Tex. Crim. App. 2009). "Article 1.13 of the Code of Criminal Procedure sets out the required formalities of a jury-trial waiver in Texas."[2] *Id.* The record shows that these procedures were followed.

---

[2]Article 1.13(a) requires a jury trial waiver to "be made in person by the defendant in writing in open court with the consent and approval of the court, and the attorney representing the state." TEX. CODE CRIM. PROC. ANN. art. 1.13(a)

5

That said, Larkin argues that she "waived her right to a jury trial on the issue of guilt or innocence based on her mistaken understanding of the consequences of that decision – specifically with regard to the issue of punishment." Larkin claims she only waived her right to trial by jury on punishment because she believed it "would result in a six month probated sentence." The record shows that this statement is meritless.

Larkin wished for community supervision. Because she had previously committed a felony, she was not eligible for jury-recommended community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.055(b). The trial court explained, and the record shows Larkin understood, that she could only be eligible for judge-ordered regular or deferred adjudication community supervision if she waived her right to a jury trial on punishment. *See* TEX. CODE CRIM. PROC. ANN. arts. 42A.053, 42A.101. The trial court also informed Larkin that, while it would consider community supervision, it could not guarantee it. Both the trial court and Larkin's counsel made clear that she could face up to "20 years in prison." Larkin told the trial court several times that she understood the full range of punishment and wished to proceed with a bench trial on punishment.

Larkin's assertion that her jury-trial waiver was conditioned on a promise or understanding that she would receive community supervision is meritless. We conclude that the record shows Larkin understood that the trial court would consider the full range of punishment and intelligently, knowingly, and voluntarily waived her right to a jury trial on punishment. *See Smith v. State*, 363

_____

(Supp.). Also, "[t]he consent and approval by the court shall be entered of record on the minutes of the court, and the consent and approval of the attorney representing the state shall be in writing, signed by that attorney, and filed in the papers of the cause before the defendant enters the defendant's plea." *Id.*

6

S.W.3d 761, 768 (Tex. App.—Austin 2012, pet. ref'd). As a result, we overrule her first point of error.

Larkin's second point of error raising an ineffective assistance of counsel claim is also based on her assertion that she did not understand the consequences of her jury-trial waiver and the full range of punishment. To prevail on a claim of ineffective assistance of counsel, the defendant must first make a showing that counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *see also Ex parte Imoudu*, 284 S.W.3d 866, 869 (Tex. Crim. App. 2009). We conclude that Larkin has not made this showing since the record establishes that she understood the full range of punishment, knew that the trial court was not required to give her community supervision, and intelligently, knowingly, and voluntarily waived her right to trial by jury on punishment. For that reason, we overrule Larkin's second point of error.

## III.  Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Justice

Date Submitted:  October 22, 2019
Date Decided:  October 30, 2019

Do Not Publish

7